**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| RASA Energy, Inc., and Activate Clean Energy, LLC. | |
| Plaintiffs, | **Civil Action No.** |
| v. | |
| Valkor LLC., Valkor Oil and Gas LLC, John Doe #1-10, Unknown Individual(s), and John Doe, Inc. #1-10, Unknown Entity(ies) | **VERIFIED COMPLAINT** |
| | |
| Defendants. | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE, UNFAIR AND DECEPTIVE TRADE PRACTICES, NEGLIGENT MISREPRESENTATION, INTENTIONAL MISREPRESENTATION, AND BREACH OF CONFIDENTIALITY**

Plaintiffs, RASA Energy, Inc. ("RASA") and Activate Clean Energy, LLC. ("ACE") (Collectively referred hereinto as "Plaintiffs"), by and through their attorneys, for their Complaint against defendants Valkor LLC, Valkor Oil and Gas LLC, and all other individuals and/or entities currently unknown (collectively

"Valkor" and/or "Defendant(s)"), allege the following. Allegations made on belief are premised on the belief that the same are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PRELIMINARY STATEMENTS

1.     This action by Plaintiffs against Defendant is for breach of contract, tortious interference, unfair and deceptive trade practices, negligent misrepresentation, intentional misrepresentation, and breach of confidentiality obligations.

2.     Plaintiffs and Defendant entered into an agreement ("Agreement") to resolve a prior promissory note in the amount of Five Hundred Thousand Dollars ($500,000.00) ("Promissory Note") that Valkor had breached.

3.     The Agreement in part included Valkor's obligations:

   a.  To provide to RASA a suitable location for its operation of its Mobile Tar Sand Processing Unit ("Mobile Unit");

   b.  To provide to RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day; and

   c.  To assign to RASA at least one tract tar sand lease (the "Tract") from one of the following locations: (1) The tar sand lease in Township T6S Range R22E, in 06 to the West of Bonanza Highway under SITLA Lease

2

ML 54066-OBA, or (2) Lease ML 53918 or (3) ML 539807 or a Tract selected from some contiguous combination of the three locations.

4.  Defendant failed to provide RASA a suitable location for its operation of its Mobile Unit in material breach of the terms of the Agreement.

5.  Defendant failed to provide RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day in material breach of the terms of the Agreement.

6.  Defendant failed to assign to RASA the tar sand lease right to the Tract in material breach of the terms of the Agreement.

7.  Based on information and belief, Valkor either lacked the required legal property rights to enter into the Agreement and fulfill its obligations under its terms, or Valkor never intended to fulfill its obligations under the Agreement.

8.  Based on information and belief, Valkor made material misrepresentations to Plaintiffs in the process of entering into the Agreement, including Valkor's ability or intent to fulfill its obligations under the Agreement and the terms of the Agreement, and subsequently regarding the rights and obligations of the parties under the Agreement.

9.  Based on information and belief, Defendant never intended:

a.  To provide RASA a suitable location for its operation of its Mobile Unit;

    b.   To provide RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day; or

    c.   To assign to RASA the tar sand lease rights to the Tract.

10.    Based on information and belief, Defendant made material misrepresentations that it had the required rights or intent:

    a.   To provide RASA a suitable location for its operation of its Mobile Unit;

    b.   To provide RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day; or

    c.   To assign to RASA the tar sand lease rights to the Tract.

11.    Based on information and belief, Valkor has interfered with and continues to interfere with Plaintiffs' business and business relationships, including interference with potential investors of Plaintiffs.

12.    Plaintiffs have been and continue to incur significant damages as a result of Valkor's actions and/or inactions.

## DIVERSITY JURISDICTION

13.    Pursuant to 28 U.S.C. § 1332(a), this Court has diversity jurisdiction over this action and all claims brought by Plaintiffs against Defendant, because there is an amount in controversy exceeding $75,000 and there is complete diversity

among the parties.

## VENUE

14.     Venue is proper in this Court pursuant to the terms of the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶13; See Exhibit 2, the "Tar Sands Service & Debt Settlement Agreement"* ("Any disputes arising hereunder shall be submitted exclusively to any court of competent jurisdiction located in Texas.").

## PARTIES

### A. PLAINTIFFS

15.     RASA is a corporation duly registered and existing under the laws of the State of Delaware, with its principal place of business located at 2380 Eastman Avenue, Suite 180, Oxnard, CA 93030. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶1.*

16.     ACE is a limited liability company duly registered and existing under the laws of the State of Delaware, with its principal place of business located at 2380 Eastman Avenue, Suite 180, Oxnard, CA 93030. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶2.*

17.     ACE is a technology developer with a unique trade secret technology

directed towards tar sand processing. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶3.*

18.     RASA is a developer of a mobile unit for tar sands processing, and a technology licensee of Active Clean Energy LLC ("ACE"). *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶4.*

19.     ACE is also the successor of interest of all rights to the Promissory Note.  *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶5.*

20.     RASA is a corporation with less than $25,000,000.00 in assets and is not owned or controlled by a corporation or entity with assets of $25,000,000.00 or more. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶38.*

### B. DEFENDANTS

21.     It is believed that at all relevant times, Valkor LLC is a company registered and existing under the laws of the State of Nevada, with its principal place of business located at Woods Cross, Utah. It is believed that at all relevant times, Valkor Oil and Gas LLC is a company registered and existing under the laws of the State of Texas as of August 30th, 2018, with its principal place of business located at 21732 Provincial Blvd.

Ste. 160, Katy, TX 77450, and registered as a foreign entity in the State of Utah. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶6.*

22.     It is believed that at all relevant times, Valkor has process engineering capabilities and experience in tar sand extraction and production. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶7.*

## FACTUAL BACKGROUND

23.     ACE is the successor of interest of all rights to the Promissory Note, which was issued by Valkor as part of the payment for a $500,000.00 loan that was extended to Valkor on November 1, 2022 ("Loan"). The maturity of the Promissory Note has long passed, and the Loan was never repaid leading the Loan to be in default. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶5; See Exhibit 1, the "Promissory Note".*

24.     On April 19, 2024, Plaintiffs and Defendant entered into the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶8; See Exhibit 2, the "Tar Sands Service & Debt Settlement Agreement".*

25.     The Agreement was intended to amicably resolve the Promissory Note

default by converting sixty percent (60%) of the face value of the Promissory Note ($300,000.00) into a pre-payment for services to be provided to RASA by Valkor, with the date of prepayment set to be July 1, 2024 ("Services") and the remainder of forty percent (40%) of the Promissory Note ($200,000.00) to be recouped by Plaintiffs from revenue from production followed by a revenue share between the parties. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶9; See Exhibit 2, the "Tar Sands Service & Debt Settlement Agreement".*

26. The Agreement in part included Valkor's obligations:

a. To provide to RASA a suitable location for its operation of its Mobile Tar Sand Processing Unit ("Mobile Unit");

b. To provide to RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day; and

c. To assign to RASA at least one tract tar sand lease (the "Tract") from one of the following locations: (1) The tar sand lease in Township T6S Range R22E, in 06 to the West of Bonanza Highway under SITLA Lease ML 54066-OBA, or (2) Lease ML 53918 or (3) ML 539807 or a Tract selected from some contiguous combination of the three locations.

*See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶10; See Exhibit 2, the "Tar Sands Service & Debt Settlement Agreement".*

27.    The Agreement states that 20% of the revenue from the production of the Plaintiffs mobile unit was to be split with Valkor's share being applied against the remaining balance of the Promissory Note until the note was fully paid, after which time, Valkor's revenue split would be paid to Valkor on a monthly or quarterly basis. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶11; See Exhibit 2, the "Tar Sands Service & Debt Settlement Agreement".*

28.    The term of the Agreement is 18 months from the effective date of the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶12; See Exhibit 2, the "Tar Sands Service & Debt Settlement Agreement".*

29.    Valkor wrongfully terminated the Agreement via an email notice on June 19, 2024. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶14; See Exhibit 4, the "Termination of Contract".*

30.    Valkor failed to provide RASA a suitable location for its operation of its Mobile Unit in material breach of the terms of the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶15.*

31.    Valkor failed to provide RASA sufficient supply of tar sands for its

operation of its Mobile Unit of up to 75 tons per day in material breach of the terms of the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶16.*

32.     Valkor failed to assign to RASA the tar sand lease rights to the Tract. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶17.*

33.     As part of the negotiation and implementation phases of the Agreement, Valkor had repeatedly represented to Plaintiffs that Valkor had the required rights relative to the Crown Mine, including rights to Crown Mine tar sands supplies, mining rights of tar sands, and operational rights to mine, crush and supply to RASA up to 75 tons of ore per day. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶18.*

34.     Relying on Valkor's representations, Plaintiffs decided to move their business interest forward in accordance with Valkor's representations. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶19.*

35.     Based on information and belief, Valkor either lacked the required legal rights to enter into the Agreement and fulfill its obligations under its terms, or Valkor never intended to fulfill its obligations under the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean*

*Energy, LLC., ¶20.*

36.     On or about June 14, 2024, Plaintiffs discovered that, at all relevant times, Valkor did not and does not have the required rights relative to a designated location, i.e. the Crown Mine, including rights to Crown Mine tar sands supplies, mining rights of tar sands, and operational rights to mine, crush and supply to RASA up to 75 tons of ore per day to enter into the Agreement with Plaintiffs, and to allow RASA to perform its agreed upon operations including production of hydrocarbons from Crown Mine tar sands. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶21.*

37.     On or about June 14, 2024, Plaintiffs discovered that, at all relevant times, Valkor made material misrepresentations that it had the required rights relative to the Crown Mine, including rights to Crown Mine tar sands supplies, mining rights for tar sands, and operational rights to mine, crush and supply to RASA up to 75 tons of ore per day. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶22.*

38.     Based on information and belief, Valkor made material misrepresentations that it had the required intent:

      a.   To provide RASA a suitable location for its operation of its Mobile Unit;

      b.   To provide RASA sufficient supply of tar sands for its operation of its

Mobile Unit of up to 75 tons per day; or

   c.  To assign to RASA the tar sand lease rights to the Tract.

*See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶23; See Exhibit 3, Transcript of a Recorded Conversation Between Valkor and James Rose.*

39.    On or about June 14, 2024, Plaintiffs discovered that, at all relevant times, Valkor made material misrepresentations regarding Valkor's intent to comply with the terms of the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶24.*

40.    In accordance with the Agreement, Plaintiffs and Valkor were to agree on a particular tract that Valkor would assign to RASA (the "Particular Tract"). That Particular Tract was identified as: all of the working interests and operating rights in and under certain lands situated in Township 6 South, Range 22 East (Great Salt Lake Base and Meridian), Uintah County, State of Utah, from the surface thereof down to and including a depth of 500 feet below the surface, being a part of the lands included in and covered by that certain "Utah Mineral Lease for Bituminous-Asphaltic Sands," made effective as of June 1, 2021 (Mineral Lease No. 54066-OBA) and "Utah Mineral Lease for Bituminous-Asphaltic Sands," made effective as of June 1, 2018 (Mineral Lease No. 53807) between the State of Utah, acting through the School and Institutional Trust Lands Administration ("SITLA"), as

lessor, and Valkor Energy Holdings, LLC, as lessee, as more particularly described as follows:

TOWNSHIP 6 SOUTH, RANGE 22 EAST (SLB&M)

- Lease ML 53807, Section 31, Tracts NWNE 40, NENE 40 and SENE 40 and

- Lease ML 54066-OBA, Section 32, Tracts SWNW 40 SENW 40, NWSE 40, SWSE 40 and SESE 40.

- Limited to the Bituminous-Asphaltic Sands ridge extending from northwest to southeast that is south of South Alahandra Ferry Road highlighted in Exhibit 5. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶25.*

41.     Valkor repeatedly promised to file the appropriate lease amendment documents conveying the Particular Tract to RASA including on June 17, 2024, when Valkor assured RASA that it would, without exception, file the lease amendment forms to the Particular Tract with SITLA that afternoon by 4pm. However, Valkor never filed the required lease amendment documents conveying the Particular Tract to RASA despite repeated assurances. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶26.*

42.     To date, RASA has not received (a) a suitable location for the operation of its Mobile Unit, (b) any tar sands materials, or (c) an assignment of the tar sand lease rights to the Tract, and as a result, Valkor materially failed to fulfill its obligations under the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶27.*

43.     Valkor's default is ongoing now including approximately three (3) months and counting. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶28.*

44.     Based on information and belief, Valkor misrepresented that federal, state and local government regulatory agencies, whose approvals are necessary for the Agreement operations at Crown Mine, have been consulted and have visited Crown Mine for purposes of fulfilling its obligations under the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶29.*

45.     Based on information and belief, Valkor tortiously interfered with RASA's potential business opportunities by making false and defamatory statements to at least one potential investor of RASA, including false and defamatory statements regarding qualification of RASA scientists and executives, RASA's proprietary trade secret processes, and accusations that RASA had stolen technology from Valkor. These actions were intended to dissuade and discourage the potential

14

investor from investing in and entering into business relationships with RASA, while simultaneously attempting to persuade the investor to invest in and form a relationship with Valkor. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶30; See Exhibit 3, Transcript of a Recorded Conversation Between Valkor and James Rose.*

46.     Based on information and belief, Valkor interfered with at least one potential investor of Plaintiffs to discourage investment into and business relationships with Plaintiffs while disclosing confidential information of Plaintiffs in violation of the confidentiality terms of the Agreement. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶31; See Exhibit 3, Recorded Conversation Between Valkor and James Rose.*

47.     Based on information and belief, Valkor breached its confidentiality obligations under the Agreement, including disclosure of Plaintiffs' confidential information to at least one potential investor of Plaintiffs while attempting to discourage investment into and business relationships with Plaintiffs. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶32.*

48.     Valkor's actions have caused significant damage to the business and business operations of Plaintiffs, which Valkor is keenly aware. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶33.*

49.     Plaintiffs strongly, materially and detrimentally relied upon Valkor's material misrepresentations and/or failures to disclose material facts and information relating to Valkor's ability and/or willingness and/or intent to fulfill its obligations under the terms of the Agreement including (a) to provide RASA a suitable location for its operation of its Mobile Unit; (b) to provide RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day; and (c) To assign to RASA the tar sand lease rights to the Tract. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶34.*

50.     As a result of Valkor's actions and/or inactions, RASA was forced to obtain less desirable asphalt material rather than tar sand, ship material to Iowa, modify its machine to process asphalt rather than tar sands, and develop additional manufacturing specifications of machines being built for RASA. This has caused significant harm to Plaintiffs' business including not meeting investors' expectations regarding the type of material being processed by Plaintiffs' machines, the loss of prospective business relationships, as well as revenue and profits. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶35.*

51.     As a result of Valkor's actions and/or inactions, RASA continues to suffer loss of prospective business relationships, investors, as well as revenue and profits. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc.,*

*and Activate Clean Energy, LLC., ¶36.*

52.     Valkor's actions have caused and will continue to cause substantial harm to Plaintiffs, and, therefore, Plaintiffs seek specific performance, preliminary and permanent injunctive relief, damages, and attorney's fees and costs. *See Exhibit A: Declaration of Dr. David E. Martin, CEO of RASA Energy, Inc., and Activate Clean Energy, LLC., ¶37.*

<h2 style="text-align:center">FIRST CAUSE OF ACTION</h2>

<h2 style="text-align:center">BREACH OF CONTRACT</h2>

53.     Paragraphs 1 through 52 are incorporated herein as though set forth in their entirety.

54.     Plaintiffs and Defendants have a valid Agreement.

55.     Plaintiffs have duly performed and/or tendered performance; Plaintiffs have repeatedly inquired about, and visited, the Vivicor Site and Crown Mine to prepare for operations under the Agreement.

56.     Defendants has and continues to materially breach the terms of the Agreement;

      a.     Defendants failed to provide RASA a suitable location for its operation of its Mobile Unit;

      b.     Defendants failed to provide RASA sufficient supply of tar sands for its operation of its Mobile Unit of up to 75 tons per day; and

c. Defendants failed to assign to RASA the tar sand lease rights to the Tract. Specifically, Defendants failed to assign the lease rights to all of the working interests and operating rights in and under certain lands situated in Township 6 South, Range 22 East (Great Salt Lake Base and Meridian), Uintah County, State of Utah, from the surface thereof down to and including a depth of 500 feet below the surface, being a part of the lands included in and covered by that certain "Utah Mineral Lease for Bituminous-Asphaltic Sands," made effective as of June 1, 2021 (Mineral Lease No. 54066-OBA) and "Utah Mineral Lease for Bituminous-Asphaltic Sands," made effective as of June 1, 2018 (Mineral Lease No. 53807) between the State of Utah, acting through the School and Institutional Trust Lands Administration ("SITLA"), as lessor, and Valkor Energy Holdings, LLC, as lessee, as more particularly described as follows:

TOWNSHIP 6 SOUTH, RANGE 22 EAST (SLB&M)

- Lease ML 53807, Section 31, Tracts NWNE 40, NENE 40 and SENE 40 and

- Lease ML 54066-OBA, Section 32, Tracts SWNW 40 SENW 40, NWSE 40, SWSE 40 and SESE 40.

- Limited to the Bituminous-Asphaltic Sands ridge extending from northwest to southeast that is south of South Alahandra Ferry Road highlighted in Exhibit 5.

57.     Plaintiffs have repeatedly demanded that Defendants fulfill its obligations under the Agreement, but Defendants refused and wrongfully terminated the Agreement.

58.     As a result of Defendants' actions and/or inactions, RASA was forced to obtain less desirable asphalt material rather than tar sand, ship material to Iowa, change its machine to process asphalt rather than tar sands, and change the manufacturing specifications of machines being built for RASA. This caused significant harm to Plaintiffs' business including not meeting investor's expectations regarding the type of material being processed by Plaintiffs' machines, loss of prospective business relationships, as well as revenue and profits.

59.     As a result of Defendants' material breach of the Agreement, Plaintiffs have been damaged in an amount to be determined by the court, but no less than $10,000,000.00.

## SECOND CAUSE OF ACTION

## TORTIOUS INTERFERENCE

60.     Paragraphs 1 through 59 are incorporated herein as though set forth in their

entirety.

61.     RASA had a reasonable probability of entering into a prospective relationship with at least one investor, James Rose, absent the interferences by Defendants.

62.     Defendants intended to and/or knew that its actions would cause interference with the prospective relationship between RASA and at least one investor, James Rose.

63.     Defendants' conduct and actions were and continue to be independently tortious and/or unlawful, including false and defamatory statements regarding qualification of RASA scientists and executives, RASA's proprietary trade secret processes, and accusations that RASA had stolen technology from Defendants. These actions were intended to dissuade and discourage at least one potential investor from investing in and entering into business relationships with RASA, while simultaneously attempting to persuade the investor to invest in and form a relationship with Defendants.

64.     Defendants' interference has and continues to proximately cause injury and actual damages to RASA, including but not limited to loss of prospective business relationships, as well as revenue and profits.

65.     As a result of Defendants' tortious interference, Plaintiffs have been damaged in an amount to be determined by the court, but no less than $10,000,000.00.

**THIRD CAUSE OF ACTION**

**UNFAIR AND DECEPTIVE TRADE PRACTICES**

**TEXAS BUSINESS AND COMMERCE CODE § 17.46, et seq.**

66.     Paragraphs 1 through 65 are incorporated herein as though set forth in their entirety.

67.     RASA is a consumer for the purposes of the Deceptive Trade Practices Act and Texas Business and Commerce Code; RASA is a corporation that agreed to purchase and/or lease goods and/or services from Defendants.

68.     Defendants engaged in, and continues to engage in, false, misleading and/or deceptive acts, including but not limited to making material misrepresentations to Plaintiffs during the process of entering into the Agreement and subsequently while in breach of the Agreement, and to prospective business relationship partners and investors of RASA.

69.     Defendants' false, misleading and/or deceptive acts constitute a producing cause of RASA's damages; Defendants' false, misleading and/or deceptive acts have caused RASA's damages, including but not limited to entering into an Agreement under which Defendants do not have the rights or intent to fulfill its obligations to RASA, forcing RASA to obtain less desirable asphalt material rather than tar sand, ship material to Iowa, modify its machine to process asphalt rather than tar sands, and develop additional manufacturing specifications of machines being built for RASA.

70.     Defendants' false, misleading and/or deceptive acts have and continue to cause significant harm to Plaintiffs' business including not meeting investor's expectations regarding the type of material being processed by Plaintiffs' machines, loss of prospective business relationships, and revenue and profits.

71.     As a result of Defendants' false, misleading and/or deceptive acts, Plaintiffs have been damaged in an amount to be determined by the court, but no less than $10,000,000.00.

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

72.     Paragraphs 1 through 71 are incorporated herein as though set forth in their entirety.

73.     Defendants owed a duty to Plaintiffs to supply correct information; including but not limited to supply the correct information with respect to Defendants' rights and ability as well as its intent to fulfill its obligations under the Agreement.

74.     Defendants breached their duty to Plaintiffs to supply correct information, including but not limited to supply the correct information with respect to Defendants' rights and ability as well as intent to fulfill their obligations under the Agreement.

75.     Plaintiffs have and continue to sustain damages as a result of justifiable reliance on the material misrepresentations of Defendants, including but not limited to entering into an Agreement under which Defendants did not have the rights or intent to

fulfill its obligations to RASA, forcing RASA to obtain less desirable asphalt material rather than tar sand, ship material to Iowa, modify its machine to process asphalt rather than tar sands, and develop additional manufacturing specifications of machines being built for RASA.

76.     Defendants' material misrepresentations have caused significant harm to Plaintiffs' business, including but not limited to not meeting investor's expectations regarding the type of material being processed by Plaintiffs' machines, loss of prospective business relationships, and revenue and profits.

77.     As a result of Defendants' material misrepresentations, Plaintiffs have been damaged in an amount to be determined by the court, but no less than $10,000,000.00.

## FIFTH CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION

78.     Paragraphs 1 through 77 and are incorporated herein as though set forth in their entirety.

79.     Defendants made material misrepresentations that were false to Plaintiffs, including but not limited to Defendants' rights and ability or intent to fulfill its obligations under the Agreement.

80.     Defendants knew that these representations were false and/or Defendants made these representations recklessly without any knowledge of their truth.

23

81.     Defendants intended to induce the Plaintiffs to act upon these representations; including but not limited to enter into the Agreement with Defendants.

82.     Plaintiffs have and continue to sustain damages as a result of justifiable reliance on the material misrepresentations of Defendants, including but not limited to entering into an Agreement under which Defendants did not have the rights or intent to fulfill its obligations to RASA, forcing RASA to obtain less desirable asphalt material rather than tar sand, ship material to Iowa, modify its machine to process asphalt rather than tar sands, and develop additional manufacturing specifications of machines being built for RASA.

83.     Defendants' material misrepresentations have caused significant harm to Plaintiffs' business including not meeting investor's expectations regarding the type of material being processed by Plaintiffs' machines, loss of prospective business relationships, as well as revenue and profits.

84.     As a result of Defendants' material misrepresentations, Plaintiffs have been damaged in an amount to be determined by the court, but no less than $10,000,000.00.

## FIFTH CAUSE OF ACTION
## BREACH OF CONFIDENTIALTIY

85.     Paragraphs 1 through 84 are incorporated herein as though set forth in their

entirety.

86.     Defendants are under confidentiality obligations under the terms of the Agreement.

87.     Defendants breached their confidentiality obligations, including but not limited to disclosure of Plaintiffs' confidential information to at least one potential investor of Plaintiffs while attempting to discourage investment into and business relationships with Plaintiffs.

88.     Defendants' actions have caused significant damage to the business and business operations of Plaintiffs, which Defendants are keenly aware.

89.     As a result of Defendants' breach of confidentiality, Plaintiffs have been damaged in an amount to be determined by the court, but no less than $10,000,000.00.

## JURY DEMAND

90.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

A. Judgment in favor of Plaintiffs against Defendants:

1. Finding in favor of Plaintiffs and against Defendants on all claims and defenses;

2. Finding that Plaintiffs are entitled to specific performance and ordering that Defendants shall transfer and assign to RASA at least one tract tar sand lease from one of the following locations: (1) The tar sand lease in Township T6S Range R22E, in 06 to the West of Bonanza Highway under SITLA Lease ML 54066-OBA, or (2) Lease ML 53918 or (3) ML 539807 or a Tract selected from some contiguous combination of the three locations; or in the alternative, ordering that Defendant shall transfer and assign to RASA the lease rights to all of the working interests and operating rights in and under certain lands situated in Township 6 South, Range 22 East (Great Salt Lake Base and Meridian), Uintah County, State of Utah, from the surface thereof down to and including a depth of 500 feet below the surface, being a part of the lands included in and covered by that certain "Utah Mineral Lease for Bituminous-Asphaltic Sands," made effective as of June 1, 2021 (Mineral Lease No. 54066-OBA) and

"Utah Mineral Lease for Bituminous-Asphaltic Sands," made effective as of June 1, 2018 (Mineral Lease No. 53807) between the State of Utah, acting through the School and Institutional Trust Lands Administration ("SITLA"), as lessor, and Valkor Energy Holdings, LLC, as lessee, as more particularly described as follows:

TOWNSHIP 6 SOUTH, RANGE 22 EAST (SLB&M)

- Lease ML 53807, Section 31, Tracts NWNE 40, NENE 40 and SENE 40 and

- Lease ML 54066-OBA, Section 32, Tracts SWNW 40 SENW 40, NWSE 40, SWSE 40 and SESE 40.

- Limited to the Bituminous-Asphaltic Sands ridge extending from northwest to southeast that is south of South Alahandra Ferry Road highlighted in Exhibit 5.

3. Ordering that Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making any disparaging remarks regarding Plaintiffs, and their affiliates, officers, agents, servants, employees, and/or attorneys;

b. disclosing any confidential information of the Plaintiffs in violation of the terms of the Agreement;

4. Ordering that Defendants shall undertake a corrective public statement to remedy and retract any and all prior disparaging remarks made regarding Plaintiffs and their affiliates, officers, agents, servants, employees, and/or attorneys;

5. Ordering that Defendants, within thirty days after issuance of the judgment demanded herein, be required to file with this Court and serve upon Plaintiffs' counsel a written report under oath setting forth, in detail, the manner in which Defendants have complied with the judgment;

6. Ordering that Defendants pay to Plaintiffs all damages suffered by Plaintiffs due to Defendants' unlawful acts, with prejudgment interest, as well as account for and pay to Plaintiffs all gains and profits that Defendants have enjoyed at Plaintiffs' expense. At present, Plaintiffs cannot ascertain the full extent of its damages and lost profits.

7. In the alternative, Plaintiffs be awarded at least $10,000,000.00.

8. That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

9. Award any and all other relief that this Court deems just and proper.


Dated: September 25, 2024          */s/ Ray Ashburg*

                                   Ray Ashburg
                                   Email: Ashburg@AvontisLaw.com
                                   Texas Bar ID No. 24055116
                                   AVONTIS
                                   Ashburg & Prince, PLLC.
                                   112 S. Tryon Street, Suite 809
                                   Charlotte, NC 28284
                                   Telephone: (704) 408-2530
                                   Facsimile: (704) 951-7931
                                   *Attorney for Plaintiff*