DocuSign Envelope ID: 5DAA479C-1BBF-49E4-9CDA-899130B96653

**Exhibit 2**

## TAR SANDS SERVICE & DEBT SETTLEMENT AGREEMENT

This Service Agreement ("Agreement") is executed on 19 April 2024, between Valkor LLC ("Valkor"), a company duly registered and existing under the laws of the State of Nevada, with its principal place of business located at Woods Cross, Utah; Activate Clean Energy, LLC., ("ACE"), a LLC duly registered and existing under the laws of the State of Delaware, with its principal place of business located at 2380 Eastman Avenue Suite 180, Oxnard, CA 93030 and RASA Energy, Inc., ("RASA") a corporation duly registered and existing under the laws of the State of Delaware, with its principal place of business located at 2380 Eastman Avenue Suite 180, Oxnard, CA 93030. Valkor, ACE and RASA collectively are the "Parties".

Whereas, Valkor is the holder of tar sands leased lands in Utah with process engineering capabilities and experience in tar sand extraction and production,

Whereas, ACE is a technology developer with a particular technology directed towards tar sands extraction,

Whereas, RASA is a technology licensee of ACE technology and the developer of a mobile unit for tar sands extraction currently being constructed, and

Whereas, as part of past course of dealings between the Parties, a loan was extended by ACE to Valkor and Valkor issued a Promissory Note in the amount of $500,000 in favor of ACE, the maturity of which has now past, and attached hereto as ("Exhibit 1") (the "Promissory Note").

Now, therefore, the Parties wish to amicably settle this Promissory Note by converting one half of the face value of the note into a non-refundable retainer for services and data provided by Valkor and the remainder of the note to be recouped by ACE/RASA from revenue from production followed by a revenue share between the parties as more fully defined below.

    **1.**    **SCOPE OF AGREEMENT**. Subject to the terms and provisions of this Agreement and in consideration of the mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Valkor and ACE agree as follows:

    **2.**    **PROMISSORY NOTE RESOLUTION.**

    (a)    _Prepayment for Services_. The Parties agree that $300,000 of the outstanding balance of the Promissory Note shall be prepayment of services fees provided to RASA by Valkor. The date of the prepayment shall be July 1, 2024. Such services (hereinafter, the "Services") shall include:

    (i)    **Mobile Unit Location**: Valkor shall provide a suitable location for the operations of an ACE Mobile Unit providing road access for personnel and offtake, sufficient space for the unit, accessories, storage, offloading and parking for personnel, reasonable access to electricity, water, and fuel. ACE/RASA shall be responsible for all operations, maintenance, cleanup, product take away, and other matters associated with the operations. ACE/RASA shall further be responsible for all operating costs of the ACE Mobile Unit.

(ii)     **Ore Supply**: The Mobile Unit Location shall have a valid mining permit and Valkor shall mine, crush and supply ore sufficient for operations, up to 75 tons per day, for a period of six months, with additional ore provided at $15 per ton, unless otherwise agreed.

(iii)    **Lease Assignment**: Valkor shall assign to RASA one tract tar sand lease ( the "Tract") from one of the following locations: (1) The tar sand lease in Township T6S Range R22E, in 06 to the West of Bonanza Highway under SITLA Lease ML 54066-OBA, or (2) Lease ML 53918 or (3) ML 539807 or a Tract selected from some contiguous combination of the three locations. RASA/ACE may select the Tract at its preference within this area. RASA/ACE may get a reserves report for this Tract, with information and assistance provided by Valkor. If the amount of recoverable reserves is less than 5,000,000 bbls of tar sands resources in that Tract, RASA/ACE may request and Valkor shall assign a further tract adjacent thereto. Valkor shall provide reasonable assistance to enable ACE/RASA to permit and mine this resource after the above ore supply agreement expires.

(b)    <u>Revenue Share</u>.  RASA agrees to split 20% of the revenue from the production of the mobile unit operated on the Valkor site.  Valkor's revenue split to be applied against the remaining balance of the Promissory Note until said note is fully paid, after which time, Valkor's revenue split will be paid to Valkor on a (monthly/quarterly) basis by RASA.

(c)    <u>Term</u>. The term of this agreement shall be eighteen months from the Effective Date of this agreement. It is expressly understood that the services delineated herein must be utilized within this 18-month period. Failure to utilize said data, ore, or services within the stipulated time frame shall result in the forfeiture of the prepayment under Section 2(b), unless an extension is otherwise mutually agreed upon in writing by both parties.  The balance of $200,000 on the Promissory Note shall not be enforced during the 18-month period. Any remaining balance of the Promissory Note will be due and payable at that time, with Valkor permitted to voluntarily repay this balance at any time prior.

(d)    <u>Performance</u>. Valkor will perform all work in a good and workmanlike manner, using skilled, competent, and experienced labor and will provide competent supervision for all employees and other personnel under the direction and control.

3.    **INSURANCE**. Valkor shall obtain and maintain, at its own expense, sufficient insurance coverage to adequately protect against risks associated with the services performed on the property. Such insurance shall include, but not be limited to, commercial general liability insurance, workers' compensation and employer's liability

DocuSign Envelope ID: 5DAA479C-1BBF-49E4-9CDA-899130B96653

insurance, automobile liability insurance (if applicable), and any other insurance deemed necessary to cover potential liabilities arising from the contracted work.

4. **INDEMNIFICATION.** Valkor agrees to indemnify, defend, and hold harmless the RASA and ACE, their officers, directors, employees, agents, and affiliates (collectively, the 'Indemnitees') from and against any and all claims, damages, liabilities, losses, costs, and expenses (including reasonable attorneys' fees and court costs) arising out of or resulting from (i) any breach of this Agreement by Valkor, (ii) any negligent acts, errors, or omissions of Valkor or its employees, agents, or subcontractors in the performance of the services provided under this Agreement, (iii) any bodily injury, death, or property damage caused by Valkor or its employees, agents, or subcontractors in connection with the services provided under this Agreement, and (iv) any violation of applicable laws or regulations by Valkor in connection with its performance under this Agreement. Valkor's obligations under this indemnity provision shall survive the termination or expiration of this Agreement. The ACE/RASA shall promptly notify Valkor in writing of any claim subject to indemnification hereunder and shall cooperate fully with Valkor in the defense of such claim. Valkor shall have the right to control the defense and settlement of any such claim, provided that it shall not settle any claim in a manner that adversely affects the Rasa/ACE's rights or interests without the their prior written consent, which consent shall not be unreasonably withheld or delayed.

5. **WAIVER OF CONSEQUENTIAL DAMAGES.** IN NO EVENT SHALL ACE/RASA BE LIABLE TO VALKOR FOR LOSS OF PROFITS, BUSINESS INTERRUPTION, CONSEQUENTIAL, SPECULATIVE, SPECIAL OR INDIRECT DAMAGES OR EXEMPLARY OR OTHER PUNITIVE DAMAGES, HOWEVER THE SAME MAY BE CAUSED, INCLUDING AS A RESULT OF THE CLAIMED FAULT OR NEGLIGENCE OF ACE/RASA.

6. **NON-TRANSFERABLE:** This Agreement is non-transferable and shall be cancelled along with any remaining obligations to ACE/RASA in the event of transfer, except where mutually agreed by the Parties. This cancellation includes any and all outstanding debt under this Agreement and the Promissory Note. The following shall be considered a transfer under this section:

(a) **Bankruptcy:** Involuntary or voluntary bankruptcy under federal for state laws, where financial control of the business is given to a court appointed party.

(b) **Sale of Business:** voluntary sale of all or the majority of shares in ACE or RASA to other than the current owners of ACE or RASA as of the date of this Agreement.

(c) **Cessation of Business:** Voluntary windup or cessation of business, where cessation shall be considered compete where no reply is made to multiple contact attempts by Valkor and no other contact occurs between the Parties for a period of six (6) months.

7.  **MISCELLANEOUS**.

(a) <u>Confidentiality</u>. All non-public, confidential or proprietary information of ACE/RASA ("**Confidential Information**"), including, but not limited to, specifications, samples, patterns, designs, plans, drawings, documents, data, business operations, company lists, pricing, discounts or rebates disclosed by ACE/RASA to Valkor, whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated or otherwise identified as "confidential," in connection with this Agreement is confidential, solely for their use in performing this Agreement and may not be disclosed or copied unless authorized by ACE/RASA in writing. Confidential Information does not include any information that: (a) is or becomes generally available to the public other than as a result of Valkor's breach of this Agreement; (b) is obtained by Valkor on a non-confidential basis from a third-party that was not legally or contractually restricted from disclosing such information; (c) Valkor establishes by documentary evidence, was in its possession prior to ACE/RASA's disclosure hereunder. ACE/RASA shall be entitled to injunctive relief for any violation of this provision.

(b) <u>Governing Law and Venue</u>. This Agreement is governed by and must be construed in accordance with the laws of the State of Texas without regard to any conflict of laws provisions that would have the effect of applying the law of another state or jurisdiction. Any disputes arising hereunder shall be submitted exclusively to any court of competent jurisdiction located in Texas.

(c) <u>Waiver; Severability</u>. Any waiver on the part of a Party of any term or condition of this Agreement shall not constitute a precedent or bind either Party to a waiver of any succeeding breach of the same or any other term or condition of this Agreement. If any provision of this Agreement is found to be invalid or unenforceable, that provision will be disregarded by the Parties, replaced automatically with a provision that is as close in intent as possible to the invalid or unenforceable provision but that is valid and enforceable, and the balance of this Agreement will be enforced as the integrated written agreement of the Parties.

(d) <u>Entire Agreement/Modification</u>.  This Agreement constitutes the entire understanding between the parties concerning the subject matter hereof and supersedes all prior agreements, whether written or oral. This Agreement may be executed electronically and in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

[SIGNATURE PAGE FOLLOWS]

- 5 -

IN WITNESS WHEREOF, the Agreement is executed by the Parties' authorized representatives as of the Effective Date:

| ACE/RASA: | VALKOR: |
|---|---|
| By: *(DocuSigned by: 6247BBE72CED4C5)* | By: *(signature)* |
| Name: David E. Martin | Name: Steven Byle |
| Title: CEO | Title: CEO/ Managing Member |

DocuSign Envelope ID: 5DAA479C-1BBF-49E4-9CDA-899130B96653

# EXHIBIT 1

DocuSign Envelope ID: 5DAA479C-1BBF-49E4-9CDA-899130B96653

## PROMISSORY NOTE

This Promissory Note (the "Note") acknowledges a loan of Five Hundred Thousand US Dollars ($500,000.00 USD) was made by James Purpura, CEO of Activate Clean Energy LLC ("Lender") located at 500 N. Marketplace Drive, Suite 300, Centerville, UT 84014, to Valkor Oil and Gas LLC ("Borrower") located at Kiln Building, Studio 31, 1090 Center Drive, Park City, UT 84098, on November 1, 2022, and outlines the terms of the loan repayment.

For Value Received the Borrower promises to pay to the Lender the principal sum of Five Hundred Thousand US Dollars ($500,000.00 USD) in full within Forty-Eight (48) hours of receipt of money from Through the Oil Mining Company PLC ("TomCo") or by June 30, 2023, whichever comes sooner. No interest shall be applied during this period.

The Borrower shall be liable for all costs, expenses and expenditures incurred including, without limitation, the complete legal costs of the Lender incurred by enforcing this Note as a result of any default by the Borrower and such costs will be added to the principal then outstanding and shall be due and payable by the Borrower to the Lender immediately upon demand of the Lender.

This Note will be construed in accordance with and governed by the laws of the State of Utah. This Note will ensure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns of the Borrower and the Lender. The Borrower waives presentment for payment, notice of non-payment, protest and notice of protest.

IN WITNESS WHEREOF the parties have duly affixed their signatures below:

*(signature)*
James Purpura, CEO
Activate Clean Energy LLC

*(signature)*
Steven Byle, CEO
Valkor Oil and Gas LLC