**From:** Steven Byle <steven.byle@valkor.com>
**Sent:** Wednesday, June 19, 2024 4:53 PM
**To:** David Martin <demartin@rasa.energy>
**Cc:** Tim Wilson <tkwilson@rasa.energy>; Stanford Graham <stan@getyourelements.com>
**Subject:** Termination of Contract

Gentlemen:

Given events over the weekend, with regret, we would like to cancel of all agreements regarding settlement with regards to promissory note with ACE.

We had considered what we were doing for this initial 40 tons of material to be a favor, rather than part of that agreement. Unfortunately, there is no mine open for mining right now, including Crown, US Oil Sands, or Petroteq. So there was delay. We had finally found a way to get the first truckload of ore this week from the backside of the hill and then getting the balance from a stock pile with Sky Quarry in the next week. We originally had the truck coming up for tomorrow. I have stopped those activities.

Finding ore had been my priority and I had not made closing things out with Sorenson family on the Crown site to be number one. That situation is complex, very complex. We hold 50% ownership of a 10-year lease on Track D, had operated the plant for about 2 years with a right to take ore for at a price which we believe may continue, but then it lingered in limbo for the past year. We also have an unclear situation with 10% ownership of Crown through Greenfield of the overall property including the mine. John Potter of TomCo died suddenly a couple weeks ago, and he had represented the details of amended agreements, but not shared them in writing. We had just started approaching them to close that out with an explicit lease for you to place a mobile unit on Vivakor's former site, but there were many details to work out.

Over the weekend, Stan decided to go on a "fact finding" mission, to which I did not object. He spoke to the secretary at the site, grilled our field hand at lunch, and I would assume did other investigations. He asked me for details on Crown on Friday, but when I did not answer him quickly enough… on Father's day he decided to send a message to the Sorenson attorney that we were misrepresenting things and that our contract with ACE/RASA is in breach for 2 months already, among other accusations. We are presently in negotiations with them on various things. Our first priority was permission for us to further our permit process on Track D, then it would have been to settle the lease arrangements for you. Should not have been hard.

Monday their lawyer called our lawyer upset. Then Stan had a follow up call with both of sides, and I am told doubled down on his statements. We would not call your shareholders or investors, nonetheless their lawyers, on any discrepancy or misunderstanding. Certainly not on a national holiday. I would get clarity first from you. The statements made are inaccurate an inflammatory and have damaged our reputation and relationship with a company that we have existing contracts and were in present negotiations on high value resources. It also is highly likely to get spread through the rumor mill.

Stan is unapologetic. We can't work this way. So, long story short, we are done.

We can look at a payment plan or you may pursue whatever legal remedies that you wish to take.

Text of the message to Sorenson's lawyer, Brent Andrewson:

> Brent,
>
> I'm Stanford Graham, Utah operations representative for RASA Energy, Inc. ("RASA") and its associated company ACE, LLC. This is a rather long text message. I'm sending it now because

the contents and opportunities are both timely and urgent, needing your attention.

First, my apologies for messaging you on Father's Day. I'm sure you are enjoying family time. However, I need to urgently share with you some crucial information about Mr. Steve Byle and his related business entities (Steve), the Crown Mine property in Vernal, Utah, and its owner(s) (Crown Mine). While the information appears to be quite negative, the opportunities for positive collaboration, alignment, and very positive outcomes between your clients and RASA are clearly desirable and real.

To preface what follows, I drove to Vernal on Thursday, June 13, to meet with Steve at the Crown Mine, to walk the property with him, and to discuss the progress of business we have specifically planned with him and that relied on his timey performance of several actions. We had been making such plans with him since March 2024. Unfortunately, Steve had to leave earlier than anticipated. Consequently, we did not meet. However, he informed Annette Burrows of my desire to visit the Crown Mine, which I did on Friday, June 14. While viewing the Vivicor site specifically, an area where we had discussed with Steve over a month ago, to locate our operating equipment to demonstrate scalable production of hydrocarbons from Crown Mine tar sands, Annette asked me why RASA would want to pay to clean up that area. She told me Steve had communicated this message to her prior to my arrival. In response, I indicated that under a sub-lease we had negotiated with Steve, RASA was planning on operating its equipment at that location with full access and delivery by Steve of 75k tons/day of Crown Mine tar sand. She replied that she was not aware of any lease between Crown Mine and Steve. This certainly surprised me to say the least. At that point, she immediately texted you about the existence of any leases.

Since Thursday, we have discovered what appear to be many misrepresentations regarding both tar sand supply commitments that Steve has contractually made to RASA, originating from the Crown Mine, and operational rights and abilities RASA will enjoy at the Crown Mine pursuant to rights that Steve said he had.

Steve appears to have confirmed many of this communications in writing and in his representative capacities to RASA, to me, David E. Martin, CEO, and Tim Wilson, RASA general counsel. Perhaps Steve has referenced RASA in conversations he has had with you over the last few months? Perhaps you are not aware of what Steve has specifically communicated and committed to RASA? It appears that we have been kept in the dark. Perhaps you have been as well?

We are writing you today because Friday afternoon, June 14, when I brought a few issues up with Steve about the condition and nature of current mining and operating rights he had represented to have at the Crown Mine, he informed me via text that was he "working out revised operating responsibilities with [you] now, for the mine and the permitting wells [he is] going to drill in the other half of the property." I concluded from this language that he did not presently have the rights he had represented to us in March and April.

After my visit to the Crown Mine with Annette, she kindly called me Friday afternoon, June 14, to inform me she spoke with you, that she gave you my name and mobile number. She also shared your contact information with me.

After discussing these matters with David Martin and Tim Wilson late Friday afternoon and Saturday, we deem it crucial and prudent to inform you of these apparent misrepresentations and the damages RASA has incurred and will incur as a result.

Specifically,

1. Steve has contractually agreed to provide RASA 75 thousand tons/day of tar sand material mined from the Crown property, beginning April 1, 2024. To date, RASA has received no material. This default is now nearing 2 months, impinging significantly in business operations that Steve is keenly aware of. Steve's written guarantee to provide this material to RASA was part of our effort to resolve yet another prior default by Steve and Valkor on a loan of $500,000.00, none of which has been repaid. The ability to access and receive this amount of Crown Mine tar sand materials beginning April 1, 2024, was a clear misrepresentation.

2. Steve represented to us that he currently had leasehold rights relative to the Crown Mine, ensuring his rights to Crown Mine tar sands supplies, mining rights of tar sands, and operational rights.  Of course, RASA has strongly relied Steve's representations and has moved our business interests forward, depending on the same.

3. Steve has informed us for nearly two months that, because the Crown Mine is closed, that he has been, and is, consulting with the appropriate federal, state, and local government regulatory agencies to move the mine forward on a compliance path and opening in the mine in near future.  Steve has communicated that these agencies have visited the Crown Mine.  We have learned that these representations appear to be inaccurate.  Frankly, we don't k ow what to believe. Steve has not provided any documentation.  Meanwhile, he has known of our keen interest to get the Crown Mine open and has provided us with reports of compliance "progress".  Again, we are uncertain about what, if anything, has happened on site.  Moreover, we are now informed that relevant agencies whose approvals are necessary for opening the mine have not even visited the Crown Mine in the last two months.

4. Sadly, we have learned independently that John Potter, Tomco CEO, passed away suddenly on May 24, 2024. Steve did not advise us of this profoundly significant fact. We have verified this information via Tomco's listed information on the LSE.

All of these facts, and others which we can discuss, have damaged RASA.

To resolve these matters, we would prefer to have direct relations with your client(s) regarding these transactions, aligning RASA's interests with your client's best interests.  We are available to discuss how RASA and your client(s) can work together to help the Crown Mine finally flourish.

Brent, you can reach me at 801.243.3368.  Please call me at your earliest convenience. We want to be part of a real, immediate, sustainable, and profitable solution. I look forward to your call.

Best regards,

Stanford Graham


Steven Byle, CEO
Valkor LLC
Email: steven.byle@valkor.com
Phone : +1.832.859.5060

